IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTA K. BONIFAS, | ) | CASE NO. 3:25-CV-02752-JJH |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JEFFREY J. HELMICK |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Plaintiff, Roberta Bonifas ("Plaintiff" or "Bonifas"), challenges the final decision of Defendant, Frank Bisignano, Commissioner of Social Security ("Commissioner"), denying her application for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

In August 2022, Bonifas filed an application for POD and DIB, alleging a disability onset date of June 1, 2022, and claiming she was disabled due to blindness or low vision, bleeding in eyes, mild right cerebellar tonsillar ectopia, two heart stents, fibromyalgia, rod in left leg, plates and screws in left wrist, asthma, sinus issues, and depression. (Transcript ("Tr.") 716, 768.) The application was denied initially and upon reconsideration, and Bonifas requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 716.)

On August 27, 2024, an ALJ held a hearing, during which Bonifas, without representation by counsel or another representative, and an impartial vocational expert ("VE") testified. (*Id.*) On November 18, 2024, the ALJ issued a written decision finding Bonifas was not disabled. (*Id.* at 716-30.) The ALJ's decision became final on October 17, 2025, when the Appeals Council declined further review. (*Id.* at 1-7.)

On December 19, 2025, Bonifas filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 6-7.) Bonifas asserts the following assignment of error:

> (1) The ALJ failed to account for the social interaction limitations opined by the state agency psychologists.

(Doc. No. 6.)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Bonifas was born in November 1979 and was 44 years old at the time of her administrative hearing (Tr. 716, 729), making her a "younger" person under Social Security regulations. *See* 20 C.F.R. § 404.1563(c). She has at least a high school education. (Tr. 729.) She has past relevant work consisting of a composite job of order picker and billing clerk. (*Id.*)

### B. Relevant Medical Evidence[1]

On January 23, 2023, Bonifas saw James Trippett, LSW, by telephone for individual counseling. (*Id.* at 3795.) Trippett noted that Bonifas was engaged and in good spirits during the session. (*Id.*)

On February 2, 2023, Bonifas saw Trippett for family counseling. (*Id.* at 3793.) Trippett found Bonifas in fair spirits with a stable mood and affect. (*Id.*)

[1] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs. As Bonifas challenges only the ALJ's mental findings, the Court further limits its discussion of the relevant evidence to Bonifas' mental impairments.

On February 27, 2023, Bonifas saw Trippett for family counseling. (*Id.* at 3791.) Trippett found Bonifas in fair spirits with a stable mood and affect. (*Id.*)

On April 21, 2023, Bonifas saw Trippett for family counseling. (*Id.* at 3785.) Trippett found Bonifas in fair spirits, engaged, and receptive, with a stable mood and affect. (*Id.*)

On June 8, 2023, Bonifas saw Robert Kurzhals, Ph.D., for a consultative psychological examination. (*Id.* at 3173.) Bonifas reported an IEP for speech but denied being in special education classes while in school. (*Id.* at 3174.) She told Dr. Kurzhals that she had friends in school and "related adequately to her peers." (*Id.*) Bonifas stated she had never been fired and thought she "generally related adequately" to her supervisors and coworkers. (*Id.*) She could understand and remember work instructions, as well as concentrate and maintain attention in a work setting, but she was concerned about her current inability to remember things and conversations. (*Id.*) Bonifas reported being in marriage counseling but denied current individual mental health counseling. (*Id.*) She denied any other outpatient mental health treatment as well as psychological hospitalizations. (*Id.*) Bonifas endorsed feeling depressed some days, although not every day, as well as sleep problems, low energy, and feelings of guilt and worthlessness. (*Id.* at 3175.) She denied feeling anxious. (*Id.*)

On examination, Dr. Kurzhals found Bonifas friendly and cooperative with normal speech. (*Id.*) Bonifas appeared depressed, as she demonstrated "depressive verbalizations, occasional tearfulness, and depressed affect." (*Id.*) Dr. Kurzhals further found below average concentration and attention, as Bonifas "struggled on some tasks that involved concentration," although she was able to understand and follow simple instructions. (*Id.* at 3175-76.) Dr. Kurzhals estimated that Bonifas' level of intellectual functioning was in the average range. (*Id.* at 3176.) Dr. Kurzhals diagnosed Bonifas with an adjustment disorder with depressed mood. (*Id.*) Dr. Kurzhals opined that Bonifas "may" have a limitation in her ability to understand, remember, and carry out instructions, and that Bonifas had "limitation[s]" in her ability to sustain

concentration and persist in work-related activity at a reasonable pace, interact with supervisors, coworkers, and the public on a consistent and independent basis, and manage normal pressures in a competitive work setting. (*Id.* at 3177.)

**C. State Agency Reports**

On June 15, 2023, David Dietz, Ph.D., reviewed the file and opined that Bonifas had no limitation in her ability to understand, remember, or apply information and moderate limitations in her ability to interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. (*Id.* at 773-74.) Dr. Dietz further opined that Bonifas could "work in an environment with no strict production requirements and only occasional decision-making requirements." (*Id.* at 777.) She was "capable of intermittent, superficial interaction with co-workers and supervisor [sic], but should avoid direct interactions with the general public at large." (*Id.*) Dr. Dietz opined that Bonifas would work best in an environment with consistent daily work routines and where any major changes to those routines could be explained in advance. (*Id.* at 778.)

On February 4, 2024, on reconsideration, Irma Johnston, Psy.D., affirmed Dr. Dietz's findings. (*Id.* at 786, 789-90.)

**D. Hearing Testimony**

During the August 27, 2024 hearing, Bonifas testified to the following:

- She lives in a house with her husband and two minor children. (*Id.* at 741.) She holds a valid driver's license and she drives, although she does not drive at night because of her astigmatism. (*Id.* at 742.)

- She cannot work because of her physical impairments. (*Id.* at 747-48.)

- She has not been off work for a full 12 months because she did not want to be on disability. (*Id.* at 748.) She thought the longest she had been off work since filing her disability claim was six months. (*Id.* at 749.)

- She volunteers at her church and helps with her daughter's Girl Scout troop. (*Id.* at 754.) She also helps with an organization at her children's school. (*Id.*) She has no problems attending church services or functions. (*Id.*)

The VE testified that Bonifas had past work as a sales manager and a composite job consisting of an order picker and billing clerk and a composite job consisting of a stock checker and billing clerk. (*Id.* at 756-57.) The ALJ then posed the following hypothetical question:

> Assume that a hypothetical individual of the claimant's age, education, and work experience has a residual functional capacity for work at the light exertional level. Postural limitations of no climbing of ladders, ropes, or scaffolds. Frequent climbing of ramps and stairs. Frequent stooping, kneeling, crouching, and crawling. Occasional use of the bilateral lower extremities for operation of foot controls. Manipulative limitations of frequent use of the left upper extremity for reaching, handling, and fingering. Environmental limitations to avoid all exposure to moving mechanical parts in high, exposed places. Additional environmental limitations to avoid, more than occasional concentrated exposure to irritants such as fumes, odors, dust, gases, extreme cold, extreme heat, humidity, and vibrations. Communications limitation of no jobs in loud work environments, such as heavy traffic noise levels. The hypothetical individual can understand, remember, and carry out simple instructions for work not requiring a specific production rate, such as assembly line work, nor work requiring hourly quotas. Capable of using judgment to make simple work-related decisions with explained in advance occasional changes in a routine work setting. No interaction with the general public. Capable of occasional interaction with supervisors. Occasional superficial interaction with coworkers. Superficial defined as able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion or involve tentative tasks that extend beyond a 30-day training period. Ms. Everts, would a hypothetical individual with that residual functional capacity be able to perform either of the identified past relevant work jobs?

(*Id.* at 757-58.)

The VE testified the hypothetical individual would not be able to perform Bonifas' past work. (*Id.* at 758.) The VE further testified that the hypothetical individual would be able to perform other representative jobs in the economy, such as general office helper, shipping receiving weigher, and retail marker. (*Id.* at 759.)

## III. STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically

determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 404.1520(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d). Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, Bonifas was insured on the alleged disability onset date, June 1, 2022, and remains insured through December 31, 2028, the date last insured ("DLI"). (Tr. 716.) Therefore, in order to be entitled to POD and DIB, Bonifas must establish a continuous twelve-month period of disability commencing between these dates. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2028.

2. The claimant has not engaged in substantial gainful activity since June 1, 2022, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: obesity, status-post gastric bypass surgery; coronary artery disease (CAD) status-post heart stent implants/coronary arteriosclerosis/angioplasty; thyroid disorder with left thyroid nodule/hypothyroidism; anxiety; diabetes mellitus; cervical degenerative disc disease; left knee osteoarthritis, status-post patellofemoral arthroplasty; and depression/adjustment disorder with depressed mood (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: Postural limitations of no climbing of ladders, ropes, or scaffolds. Frequent climbing of ramps and stairs. Frequent stooping, kneeling, crouching, and crawling. Occasional use of the bilateral lower extremities for operation of foot controls. Manipulative limitations of frequent use of the left upper extremity for reaching, handling, and fingering. Environmental limitations to avoid all exposure to moving mechanical parts and high exposed places. Additional environmental limitations to avoid more than occasional, concentrated exposure to irritants such as fumes, odors, dust, gases, extreme cold, extreme heat, humidity, and vibrations. Communication limitation of no jobs in loud work environments, such as heavy traffic noise levels. Can understand, remember, and carry out simple instructions for work not requiring a specific production rate, such as assembly line work nor work requiring hourly quotas. Capable of using judgement to make simple work-related decisions with explained in advance occasional changes in a routine work setting. No interaction with the general public. Capable of occasional

interaction with supervisors. Occasional, superficial interactions with coworkers. Superficial defined as, able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion or involve tandem tasks that extend beyond a 30-day training period.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November **, 1979 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2022, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 718-30.)

## V. STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by

substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the

Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

In her sole assignment of error, Bonifas argues that, despite finding the state agency reviewing psychologists' opinions "generally persuasive," the ALJ "only included a limitation to occasional interaction" with supervisors in the RFC, not occasional *and* superficial interaction with supervisors as opined by the state agency psychologists. (Doc. No. 6 at 7.) Bonifas maintains that the ALJ "committed a legal error" not only by "deviating from the persuasive opinions of the state agency psychologists," but also by failing to explain the deviation. (*Id.*) Bonifas asserts:

> Had the ALJ found their opinions to be unpersuasive, it would make sense why their opined limitations were excluded. But, when the ALJ agreed with a specific opinion and then took the extra step to define the term and claim that it was included in the residual functional capacity it becomes unclear whether the ALJ meant to exclude the limitation or simply failed to apply the limitation to both coworkers and supervisors. The ALJ's silence on this matter makes it impossible to truly understand the reasoning behind the ALJ's decision.

(*Id.* at 7-8.)

The Commissioner responds that the Court should reject Bonifas' argument for several reasons. (Doc. No. 7 at 5.) First, "[a]n ALJ is not required to adopt every single limitation contained in an opinion *even if* the ALJ finds it wholly persuasive." (*Id.* at 5-6) (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (emphasis in original) (additional citation omitted). In addition, the Commissioner argues that the ALJ considered Bonifas' ability to interact with supervisors, and substantial evidence consisting of Bonifas' reports to the consultative psychological examiner supports the ALJ's RFC findings. (*Id.* at 6.) "Therefore, 'when reading the ALJ's decision as a whole with common sense, the Court finds the RFC – including its omission of a limitation to superficial interaction to supervisors – is adequately explained and supported by substantial evidence.'" (*Id.* at 6-7) (quoting *Haahr v. Comm'r of Soc. Sec.*, No.

3:23 CV 2159, 2024 WL 5242214, at *3 (N.D. Ohio Dec. 30, 2024) (additional citation omitted). Finally, the Commissioner argues that Bonifas based her disability claim on her physical impairments, which she does not raise in this appeal, and her hearing testimony further supported the ALJ's RFC findings. (*Id.* at 7.)

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a)(1). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R. § 404.1527(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all the relevant evidence (20 C.F.R. § 404.1546(c)) and must consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996). "In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). *See also* SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")). While the RFC is for the ALJ to determine, the claimant bears the burden of establishing the impairments that determine her RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

It is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered. *See, e.g., Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004) (finding an ALJ need not discuss every piece of evidence in the record); *Arthur v. Colvin*, No. 3:16CV765, 2017 WL 784563, at *14 (N.D. Ohio Feb. 28, 2017) (*accord*). However, courts have not hesitated to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability. *See e.g., Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"). *See also Ackles v. Colvin*, No. 3:14cv00249, 2015 WL 1757474, at *6 (S.D. Ohio April 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio March 11, 2013) ("It is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.'"); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

The ALJ incorporated the following social limitations in the RFC: "No interaction with the general public. Capable of occasional interaction with supervisors. Occasional, superficial interactions with coworkers. Superficial defined as, able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion or involve tandem tasks that extend beyond a 30-day training period." (Tr. 723.)

In weighing and analyzing the state agency reviewing psychologists' opinions, the ALJ found as follows:

> State agency psychological consultants for both reviews found the claimant had no more than moderate functional limitations for which the claimant retains the retains the ability to perform work in an environment with no strict production requirements and only occasional decision-making requirements; capable of intermittent, superficial interaction with co-workers and supervisor, but should avoid direct interactions with the general public at large; and would perform best in an environment where daily work routines are consistent and major changes to these routines can be explained in advance (1A; 4A). These opinions were generally persuasive since the overall record supported no more than moderate functional limitations which is consistent with the opinions. This is evidenced by the claimant's conservative, outpatient treatment for depression that provided improvement and stability (10F; 16F). However, some portions of the opinions were vague such as the use of "superficial" which is not a defined vocational term. Therefore, the undersigned defined superficial as able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion or involve tandem tasks that extend beyond a 30 day training period in the residual functional capacity assessment herein.

(*Id.* at 728.)

In weighing and analyzing the opinion of consulting psychological examiner Dr. Kurzhals, the ALJ found as follows:

> A psychological consultative examination was completed in June 2023 by Robert J. Kurzhals, Ph.D. (10F-11F). The claimant reported that she was taking Cymbalta and was in marriage counseling (10F/2). She said she was not depressed daily, just "some days" when she had time to and thinks about things (Id.). Based on the evaluation, Dr. Kurzhals diagnosed the claimant with adjustment disorder with depressed mood (10F/4). Dr. Kurzhals did not include an opinion regarding the claimant's work-related abilities at the conclusion of the examination report. Instead, he summarized the claimant's mental status exam performance, his observations, and the claimant's self-reports (10F/5). The psychologist did say that there "may be a limitation" in the claimant's ability to understand, carry out, and remember instructions and that there were "limitations" in in the other three functional categories. However, this is not a functional analysis, and it is vague as to what those limitations are or "may be." Therefore, those vague statements are not persuasive since they offer no probative value. Overall, the summary provided by the psychologist did not support more than moderate functional limitations. Pursuant to 20 CFR 404.1519n(c)(6), the absence of an opinion by the consultative examiner does not render the report incomplete and the undersigned has considered the

> findings from the examination in consideration of the residual functional capacity above.

(*Id.*)

This Court recently rejected an identical argument as follows:

> Second, when reading the ALJ's decision as a whole with common sense, the Court finds the RFC – including its omission of a limitation to superficial interaction to supervisors – is adequately explained and supported by substantial evidence. The ALJ only gave the state agency "some weight" and "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves*, 618 F. App'x at 275; *see also Smith v. Comm'r of Soc. Sec.*, 2014 U.S. App. LEXIS 25221, at *4 (6th Cir.) ("While Smith contends otherwise, there is no requirement that an ALJ adopt the entirety of a state expert opinion, even if affording it significant weight, or that the ALJ provide an explanation for why certain limitations proposed by the expert were not incorporated into his residual functional capacity assessment."). As the R&R points out, ALJ's opinion found Plaintiff had only a "mild" limitation in her ability to interact with others. (Doc. 9, at 22) (citing Tr. 3222). The ALJ also considered Plaintiff's statements that she "had difficulty around people other than family, and she had problems leaving her house[,]" but found those "not entirely consistent with the evidence in the file." (Tr. 3232). The ALJ further analyzed Dr. Wuebker's consultative examination of Plaintiff, which included an observation that Plaintiff "exhibited no attitudes or behaviors to suggest difficulty getting along with co-workers and supervisors." (Tr. 3234) (citing Tr. 909); *see also* Tr. 909 ("Though preferring to stay to herself, Ms. Haahr noted no problems interacting with others at work. She related cooperatively with this examiner. She exhibited no attitudes or behaviors that would suggest difficulty getting along with co-workers and supervisors."). After an analysis of this opinion, the ALJ said he had "accounted for these opinions in the above [RFC]." (Tr. 3234). Taking the opinion as a whole, the Court finds, to the extent the ALJ omitted the state agency physicians' "superficial" interaction limitation with respect to supervisors, it is adequately explained and supported.[]

*Haahr*, 2024 WL 5242214, at *3. *See also Davis v. Comm'r of Soc. Sec.*, Case No: 3:22-cv-01259, 2023 WL 5214114, at *2 (N.D. Ohio Aug. 15, 2023) (finding "*Reeves* forclose[d]" the claimant's objection that

"[t]he ALJ erroneously omitted multiple limitations opined by the state agency reviewing mental health expert despite finding the opinions to be persuasive.").[2]

In a footnote, the *Haahr* Court explained further:

> Moreover, the combination of restrictions the ALJ put on Plaintiff's mental RFC supports the fact that the RFC – as a whole – is supported by substantial evidence and arguably accounts for any superficial interaction limitation as to supervisors. As the Tenth Circuit explained in adopting a similar rationale:
>
> > [T]he ALJ did not use the word "superficially" in describing Carver's ability to interact with supervisors. But in our opinion, the ALJ sufficiently captured the essence of the Section III functional limitations by stating that Carver could "understand, remember, and carry out simple instructions in a work-related setting" and could "interact with co-workers and supervisors, under routine supervision." *Id.* at 29. Interacting with supervisors in the course of routine supervision over simple work is tantamount to the "superficial" interaction typically encountered in jobs involving such work. To conclude otherwise would parse the ALJ's language too finely.
>
> *Carver v. Colvin*, 600 F. App'x 616, 620 (10th Cir. 2015). The ALJ in this case similarly limited Plaintiff to "simple instructions[,]" "simple routine tasks[,]" "simple work[,]" and a "routine work setting with few and expected changes." (Tr. 3223).

*Haahr*, 2024 WL 5242214, at *3 n.4. The ALJ in this case also limited Bonifas to "simple instructions," "simple work-related decisions," and a "routine work setting" with occasional changes explained in advance. (Tr. 723.)

In addition, as was the case in *Davis*, there are "multiple instances in the record[] which weigh against inclusion of the omitted limitations." 2023 WL 5214114, at *3. When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). Bonifas told Dr. Kurzhals that she had never been fired from a job and thought she "generally related adequately" to her supervisors and

[2] The Court notes that counsel for the claimant in *Haahr* and *Davis* is the same as counsel for Bonifas, and yet Bonifas' counsel failed to disclose this adverse authority to the Court as required.

coworkers. (Tr. 3174.) She testified at her hearing that she volunteered at her church, helped with her daughter's Girl Scout troop, and helped with an organization at her children's school, and she had "no problems" attending church services or functions. (*Id.* at 754.)

There is no error.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: November 13, 2026

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**